Danny Barrick In order to actually be able to argue these issues, finally and frankly, this is the invite. What we have... You know what would be most helpful is you talk specifically about how this case differs from the others and why you think will fail us to those different pieces. The others in terms of what the court has been hearing today or the others... What the court has been hearing today. I gather that this is a pre-disclosure foreclosure case, i.e. there has been a foreclosure notice to you. Actually, to clarify, Your Honor, I recently did not actually get a booklet on the property. I don't think that it affects this court's no overview of what is contained in the complaint with respect to the 1286 motion. But with respect to the court's discretion to grant leave to amend if it's persuaded by the underlying analysis, that is something we would ask the court to take into consideration that the property has been foreclosed on. That being said, everything turns on Roslyn, Your Honors. I think the court can see that to the extent that after even though it was handed down, a slew of cases began coming out that simply said see Roslyn without any further analysis until recently when it goes over for a district court appeal, which, of course, I didn't rule in my client's favor on that one. There hasn't been analysis out of the California Courts of Appeal with respect to why these transfers are voidable and not void. Everything goes back, like I said, to Roslyn. Now, we've graced the court with respect to Roslyn and why we don't believe he was correctly decided, but it should be noted and really pressed upon. There is a statute in New York that says that any act by a trustee in contravention of that trust is void. That's codified. It's passed by the legislature of New York State. Roslyn specifically relied solely on cases that never addressed the issue of the statute. None of them discuss sudden actions. Isn't there a general, while there is a general rule about Federal Courts of Appeals, that we will presume that a circuit court that's interpreting state law, let's say the circuit, is accurate? Potentially, Your Honor. But this court ruled on Tlog prior to Econova, and the California Supreme Court in Econova ultimately said that the ways that the That's a different point. Listen to what I'm saying. Sure. There are two different problems. One is, when we're dealing with California law, if there's a California Court of Appeal being in between, we presume it's correct when we can say the California Supreme Court would have decided otherwise if we had a voice to say that. So that's one line. This is a different line. Here we're not dealing with California law. We're dealing with New York law. I gather there is some New York, actually New York State case law. Is there now? Is that right? Is there a New York State case on appeal? I'm sorry? Is there any New York State law on the voidable question? Yes. There's multiple cases on the issue. I asked you a specific problem. Sure. In fact, there was a case at the time of Rajman. Rajman never refers to me. And I apologize if I'm not briefed. I understand that opposing counsel wouldn't like to know this. But there was another, I know we call it the Supreme Court of New York, but I think it was a lot smaller in order. No, that's the trial court. There's a case of loan services. They haven't cited it. Have you given us the signs that you're opposing counsel to cite? No, Your Honor. We would be happy to brief the court on additional citations on these issues. A lot of this has come up since we've completed briefing. As these issues have arisen and new case laws come out, so there are specific cases in New York when they actually deal with the statute, when they actually say, okay, the law is NYBPTL 7-2.4. That's what the law says. And the law says it's void. We're going to treat it as void. So this Aurora v. Scheller, Aurora being the pen. Yes, and it's specifically a remit context. That's another flaw in Rajman, is not only does Rajman only look to cases that apply common law rather than statute, then the common law and the statute clearly conflict. But Rajman also doesn't look at a case law that deals with it in the context of a statutorily controlled trust. Now, you can have your normal run-of-the-mill, I'm going to start a trust for my family and I'm going to put assets into it, you know, upon my death, et cetera. But then you have real estate mortgage investment conduit trusts. They're creatures of statute. And the only reason why they exist is to benefit from the tax benefits that are afforded to them if they follow each specific rule. Run-of-the-mill trusts are created so that all of the assets are within the pool of the mortgages on a very specified closing date. The closing date is not a random term that the creators of the run-of-the-mill trust just came up with that they can change whenever they feel like. The closing date is specified, 826 U.S.C., 860 G, closing start-up date. The consequence of it is a tax consequence. It's not a consequence as to the quality of the transfer, is it? I disagree. The tax consequences are the sole purpose for the creation of the running trust. You create assets at the seller is the first step usually in these running trusts. You create a prospectus. Put that prospectus out on the open market. Those are filed with the SEC. Prospective investors look to your prospectus. They know what their potential returns are going to be based on what you claim the pool of mortgages are in your pool. They invest that money knowing that they are going to essentially have a tax-free status on the revenue of the trust itself as long as the trust follows the specifics of the Internal Revenue Code. At the point where that loan, and frankly, Your Honor, most of the loans, they didn't do this correctly, but that's another area over there. At the point where that loan threatens the remit status of the trust. Is it the case that one loan that's late could be threatened the status of the running trust? Potentially. I mean, these are issues of fact. These are issues. Instead of factors, that would be legal issues. Again, potentially based on what the terms of the trust are. One loan could be substantial enough to do it. Or we could do discovery and find out if 50% of the loans would make it substantial. All of these things, you know, each grain of sand actually ultimately matters. You can't get away with saying, well, we did it once. It's all right. The point being that those acts, doing those acts, may give incurred prevention of the trust. Remembering, of course, the only reason these remits exist is to enjoy the specific aspect. Okay. We had a little partial discussion before about whether California recognizes a pre-disclosure, a pre-foreclosure, or a post-disclosure case. And as we began, I mean, this is really a pre. I understand you're saying that you're going to make a complaint. That's important to know. But out of these test files, there was a pre-foreclosure. So what authority do you have for the notion that California would recognize these laws of action A and B? Is there an Article III standing problem? Well, I can't answer the Article III standing problem. I apologize if I don't prepare for that question. With respect to California law, we did brief the court on that issue, following even though our reply brief came out. First, we cited Fund B. Now, obviously, Fund B actually is different. We were only citing Fund B for the purposes of whether or not you can file a pre-foreclosure action. There was a citation to Brown versus, I want to say, Deutsche Bank National Trust Company, where the court in the first district held in a pre-foreclosure action, although even though the limit of its holding to the post-sale context is determination that borrowers have standing after a foreclosure sale, to allege that the assignment of data trust is void, raises the distinct possibility that our state Supreme Court would conclude that borrowers have a sufficient injury, even if less severe, to confer standing to bring similar allegations. But now you've moved one step back, right? In other words, you're moving it beyond the instances in which you have an actual foreclosure. I mean, you don't actually know. I mean, to a extent, we could find out. But as it's to a default, it's false. I mean, for all we know, somebody else was convinced there would be another assignment, and there was going to be a different person trying to foreclose. We don't know what would happen. I suppose. I mean, I... I don't think completely. I'll wait for you to decide how to file it. That would have been a very good reason for the court to greatly implement certainly our liberal amendment policies here in federal courts. That being said... It's fun to imagine at that point, you're saying you could have been now, but back then you couldn't have. Well, for the purposes of talking about if they can take any steps towards foreclosure as opposed to being, nobody's thinking about foreclosure. We're just trying to see what our rights are here. Whenever an assignment of due distress occurs, that's usually the signal that foreclosure proceedings are about to happen, largely because they didn't do what they were supposed to do in the six years between the loan's origination, the purported securitization. And now this assignment of due distrust. Usually they only do the assignments when a default actually occurs and they're going to not take the stakes. The only issue that you have on your merits, the timing issue, right back to the timing issue. I'm sorry. Say it again. The only issue that you're claiming makes this void rather than avoidable or void at all avoidable, the timing question with regard to the securitization. Is that the only issue or do you have anything else? Yes, sir. We don't have any no transfer theory with respect to this. I don't think anything. It's just the timing versus the securitization. Absolutely. Although I wouldn't minimize it by the word just. I think this is fine. I mean, these cases are all running around in our heads together, so I'm trying to figure out where we are. Absolutely. I guess the clear takeaway is that for years, since Glassman came out, court after court after court, including the district court in this case, were absolutely certain that Glaske had no idea what he was talking about, that nobody had a standing, and that every single case that came out cited to other cases, that cited to other cases, that cited to other cases, none of which actually contained Indian analysis. When we finally get to the Supreme Court in Eta Nova, the court basically said, what are you guys doing? Why isn't anybody actually reading CalCIF Code 2924? Why isn't anybody actually reading the language of Glaske and determining this? So now, when Eta Nova comes out and says, you were all wrong before, they've all started doing the same thing again. Rossman, let's cite to Ross, let's not provide any analysis whatsoever, and let's forget about the actual implications that occur when these women's trusts break the law. They've basically been committing tax fraud for six years, and no one seems to care about that. We are arguing that they never actually acquired these loans under these rules. The New York law is very clear. It's a void transaction, despite what the courts have decided to apply in terms of common law, and therefore, we would ask that the court, the first time, remand this back to the District Court, unless there's some other questions. The question is, do you support tax fraud in this context? And I'm not sure I understand it. If they were to simplify this part of it, if they were to ratify for this action, they would be losing the tax benefits, right? Okay. So that's not a fraud. And we theorize that if that's right, then that's the question, whether or not they lost the benefits. How does that affect the order for this on both sides? Do you guys have a responsible tax benefit? And then, you know, if you ratify the transaction and you hurt me, you're going to lose your tax benefits. Why is it not from the defendants? Because if you're saying, we'll fight the IRS, what would be wrong with the IRS reporting? Well, there's no evidence that it was ratified, right? So that would be a fact issue as well. That would be a wonderful defense that Nation Star could bring out, because this case actually proceeded. If we're only looking at the pleadings, that defense can't be translated into a legal repeating requirement. But secondly, it isn't just that they would prospectively lose the tax benefits in the future. They've been getting those tax benefits by claiming themselves as a remnant for the last, you know, now we're looking at 12 years. So they've been getting those tax benefits over those years. And whether or not the penalty to them would be paying it back, that doesn't change the fact that they've been doing it illegally in contravention of the terms of the trust itself. Now, how does that affect the borrower? I understand the question. I understand, Your Honor, that that's a concern that the members of the court have been explaining throughout the day. The issue, I think, was discussed by Ms. Dranzini earlier on, which is the idea that even though it was said, that's simply the wrong question. It doesn't matter that I owe money. The only thing that matters is who I owe that money to. If you're trying to foreclose on me and you don't actually own my loan, then that doesn't affect me. That has an impact on me. And to the most important point, the California Supreme Court has said that's not a concern when determining whether or not somebody is standing. And what we are arguing now is whether or not these tax actions are fully affordable. I realize I only have way over my time today. All right. Thank you, Your Honor. That was clarifying. Thank you. Thank you. Good morning, Your Honor. May it please the Court. My name is Melissa Tismorris, and I'm here today on behalf of the defendant, Appalachian Star Mortgage Company, and I'll do my best not to rehash any of the arguments that we've heard today. The only issue in this case is whether a post-closing date assignment is void or voidable. So you're not suggesting whether we discussed this issue at all? I would argue that because the foreclosure has been conducted, that our argument that there is no pre-foreclosure standing has essentially been voodooed by the foreclosure itself. Are well-measured statement. Yes, sir. And so there are two arguments on which Ms. Ryan stands. The first, which has been thoroughly protected by California courts and New York courts, is that a post-foreclosure or a post-closing date assignment is void under the PSA itself. Second is we could. So what is our job at this point? I would say that the purpose of a mortgage is that a job is to be done in arguing why there perhaps is some question about the New York and this is sort of a circular thing. California courts and New York courts. First of all, is there a New York appellate decision as opposed to a New York appellate decision? At this time, I'm not aware of any New York appellate decision. I'm only aware of the Rashomon decision, Your Honor. All right. So what we have there for it is the Second Circuit's view of our data clause. Yes, sir. And you don't cite this, but there is case law that says that there is some presumption given to the accuracy of the circuit with regard to the laws that are stated within the circuit. All right. So that seems to be where we are. Now, does that mean that we stop at that point? What do we do? It is a decision that, yes, we would. Because if under New York law, in a sign of the Second Circuit's view of New York law, it is true that there is a statute. You don't need to read on it much. The Rashomon decision was based on interpretation of that statute in other New York cases. There have been no close Rashomon cases that address the issue. But even Rashomon was based on a long-standing number of New York cases that read that statute far more widely than Vlasky did and the Iribopo-1 decision did, which was subsequently reversed by the New York Act. But does that deter a bunch of California cases, who probably is the worst bunch due to non-terms in California law? That's a good question. I think that those California cases, though, however, do lend credence to how the New York state law is related to California mortgages and California decent trust in California assignments. And here is the only real distinction between this case and other cases are Ms. Ryan's arguments under 26 U.S.C.A. 60G that an assignment is recorded post-90 days from the closing date. And Ms. Ryan has pointed to absolutely no place inside the tax code that finds that an assignment that's recorded after the closing date is void. The tax code itself provides that where a prohibitive transaction takes place. And they argue that an assignment that's a post-closing date assignment is a prohibitive transaction under the thermic statute. Section 860-F provides that the prohibitive transaction is taxed at 100%. And this tax is on the proceeds that the prohibitive trust would have received. And that's the who is the beneficiary? Who here is the beneficiary? Who is ratifying the ERA exclusionary? It would implicitly be the beneficiaries, that's also the certificate holders. Right. And the notion that they, you know, there's no evidence they can ratify this, you'd be pretty upset if they actually lost their tax benefits. This is so stupid. Well, they don't lose their entire tax benefit. They only lose the tax benefit as to this one singular prohibitive transaction. And so under 860-F, they don't lose all of their tax. I assume that this was done as with regard to this transaction. There's a lot more out there. That is always possible, I guess. And don't we need any evidence that they did ratify it? Had they ratified it? It would, it would use this presupposition that they ratified by virtue of not having challenged it. And you could make the argument, I suppose, that perhaps they don't know about it. But until they challenge it, you have an implicit position that they did ratify it. By the fact that they have not challenged it. They have to have a whole lot of evidence challenging it because they want to get the tax benefits. So then it went to the IRS, and there's a squirrel up here. So it's the IRS who has to challenge it. The IRS would have standing to challenge violations of the tax code, yes. And Ms. Ryan S. Barr would not have standing to challenge a violation of the tax code. She has no interest under the remic itself, and she is a stranger to the remic as a whole. And this particular issue was explicitly addressed in the Mendoza opinion, as well as the Farron versus SPS opinion that recently also came out. And both of those cases squarely addressed this issue and found that a violation of the tax code would be presuming, again, that this is a post-closed date assignment. That this does not render the assignment void, but rather renders it voidable. And if you're in a position as that, if it's voidable, because somebody consulted the board about this, voidage is in effect. Yes, sir. Whereas the absence of action is in effect ratification. Yes, sir. Okay. You two lawyers might have told us about the fact that there was factual closure. We do preparation on these cases, and we were preparing it the way it was given to us. And I do not remember anybody telling us that there was factual closure. Did anybody tell us? Did you tell us that? I said I don't remember. No. So we spent a certain amount of clerical and lawyer time and judge time arguing about an issue that's not in the case or that's going to go away. It's really not a good way to proceed. I apologize for the error. I do have nothing further unless you have any other additional questions, Your Honors. Judge Hall. I have a question about this initiation pre-foreclosure. Would you want us to say there could be an amendment, or would you want us to just treat the case as if there was a foreclosure alleged? I think it would be most prudent for the court to say that if there would be an amendment, it would be futile because the foreclosure got incurred. Excuse me, that if there was an amendment saying the foreclosure had occurred, then it would nevertheless be futile because the assignment is still renderable and not void. Thank you. Thank you, Your Honors. Thank you very much. And again, my sincere apologies for not informing the court. I honestly only recently learned about the foreclosure. Recently? I don't know how much news recently, but it's, you know, before last night when I spent a lot of time arguing that. I understand. I apologize. We start to see the confusion that occurs when we start seeing these things as voidable, pressed to it. We're put in this position that, well, maybe they didn't know about it, maybe they didn't know about it. The easy point that the Rosner Court ignored is that there is a statute that says void. I mean, the problem here, of course, is that, in fact, the executives of the EGCS would have been able to ratify it. Of course, they wouldn't ratify it because they don't want to lose the tax benefits. So the only person who really can come in here and pull this up would be the IRS, which they haven't done. But since you asked, we're talking about hundreds and hundreds and thousands of these remnants that are out there with thousands and thousands of them. Certificate holders rely on the prospectus that's issued prior to the start-up of the trust. Has the IRS ever gone after one of these? I haven't. I heard that there was some suit on behalf of certificate holders. And I know that there's a whistleblower type of laws, and it's kind of a bounty. But specifically here, there's a statute that says void. And in the case law that Rostrom and Sites do, none of those statutes actually address 7-3.4. All they say is the common law has always been voidable. Well, when you have a conflict between a common law, judge-created law, and a statute, legislatively-created law, you're always going to choose the language of the statute, especially when it's very clear on things. So it means void. If it didn't, it would mean voidable. At that point, we argued Rochman was badly decided. Rochman doesn't take New York law into account, and it doesn't take the effects of statutorily-created trust and the effects that that would have on the trust into account. With all those questions, Glasky does. Glasky still stands out. What is the California case in terms of the New York law instead of the New York law? It's essentially California and New York designing New York law, which is sort of what the message is. That's great about it. You said that you wanted to do a scientific choice, and you wanted to do that. You said just later. I'm just going to take the opportunity and we'll give you an opportunity to respond. So, Todd, thank you both very much, really, for participating. I've already been on both sides. Thank you very much. Ryan versus Asha Starbuck. Asha, do you have something to add? Thank you.
judges: Gould, Berzon, Garbis